UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN MOORE,

          Plaintiff,

    v.

PRICE, et al.,

          Defendants.

No.  2:14-cv-01232 TLN DB

FINDINGS AND RECOMMENDATIONS

      Plaintiff, Kevin Moore, is a state prisoner proceeding pro se and in forma pauperis in an action brought under 42 U.S.C. § 1983.  Plaintiff asserts a claim under the Eighth Amendment for deliberate indifference to medical needs.  Plaintiff, a diabetic, alleges that defendants failed to give him lunch while transporting him to an offsite medical appointment, which caused him to suffer hypoglycemia.

      Before the court are (1) defendants' motion for summary judgment; (2) plaintiff's motion for reconsideration; and (3) plaintiff's motion for subpoenas.  As discussed below, the undersigned recommends that each of these motions e denied.

////

////

////

////

# I.  BACKGROUND

## A.  Factual Background

### 1.  Undisputed Facts

Plaintiff is an inmate at Deuel Vocational Institution ("DVI").  (ECF No. 44-1 at 4; ECF No. 47 at 5.)  Plaintiff is diabetic.  (ECF No. 44-1 at 4; ECF No. 47 at 5.)  Defendants Parsons, Walls, and Bell are employees of the California Department of Corrections ("CDCR").  (ECF No. 44-1 at 4; ECF No. 47 at 5.)  Bell and Walls are correctional officers.  (ECF No. 44-4 ¶ 1; ECF No. 44-6 ¶ 1.)  Parsons is a correctional lieutenant.  (ECF No. 44-7 ¶ 1.)  On July 23, 2013, defendants were assigned to transport plaintiff and other inmates to offsite medical appointments. (ECF No. 44-1 at 4; ECF No. 47 at 5.)  Defendants left DVI around 1:00 p.m. for appointments scheduled between 1:45 and 2:00 p.m.  (ECF No. 44-1 at 4; ECF No. 47 at 5.)

### 2.  Plaintiff's Version of the Facts

On said date, plaintiff had a follow-up appointment with an eye doctor regarding recent laser surgery to relieve eye pressure.  (ECF No. 47 at 2.)  Before leaving, plaintiff informed defendants that he had recently received his noon insulin shot and had not eaten lunch.  (Id.) Plaintiff got sick while waiting at the doctor's office.  (Id.)  He informed Parsons that: (1) he was feeling shaky, nervous, confused, light-headed, and nauseated; (2) his heart was pounding; and (3) he had blurred vision.  (Id.)  Plaintiff asked Parsons to inform the doctor that he was experiencing hypoglycemia.  (Id.)  But he did not see defendants inform the doctor or any medical staff about the problem.  (Id.)  Nor did defendants tell him that they had done so.  (Id.)

Parsons told plaintiff that he "was not going to die and would feel better one [he] got [his] ass [back] in the van."  (Id.)  On the way back to DVI, plaintiff told defendants that he was in "emergency need of medical care."  (Id.)  Defendants ignored him.  (Id. at 3.)  It is undisputed that defendants stopped at a hamburger restaurant to get themselves food and/or drinks.  (Id. at 3, 39–41.)  Plaintiff sat in the van while they were inside.  (Id. at 3.)  He was trembling, sweating, and going in and out of consciousness.  (Id.)

////

////

2

The parties agree that they returned to DVI around 5:00 p.m.  (ECF No. 44-1 at 5; ECF No. 47 at 5.)  Defendants ordered plaintiff out of the van.  (ECF No. 47 at 3.)  He tried to stand but collapsed.  (Id.)  His feet and ankles were swollen.  (Id.)

Plaintiff was transported to the infirmary by wheelchair.  (Id.)  It is undisputed that his blood sugar was 65, which is low.  (Id.; ECF No. 44-5 ¶ 4.)  Plaintiff was immediately treated with glucose.  (ECF No. 47 at 3.)

Plaintiff had several follow-up visits with "DVI physician H. Win."  (Id.)  During these visits, plaintiff complained about swollen ankles and feet and pain in his back, legs, and scrotum.  (Id.)  Plaintiff also requested eye drops to treat his increased eye pressure, which had stabilized before the incident.  (Id.)

Dr. Win told plaintiff that his pain was due to nerve damage.  (Id.)  On November 12, 2013, plaintiff was given "special shoes for [his] swollen ankles and feet."  (Id.)

On November 19, 2013, plaintiff underwent "trabeculotomy with implantation of an aqueous shunt and scleral grafting" on his left eye.  (Id. at 4, 37.)  Gregory C. Telsluk, M.D., performed the surgery.  (Id.)  Dr. Telsluk, Dr. Win, and "DVI physician P. [Nguyen]" told plaintiff that the surgery was due in part to his increased eye pressure.  (Id. at 4.)  Nearly a month later, Dr. Telsluk performed the same surgery on plaintiff.  (Id. at 4, 38.)  The same three doctors again told plaintiff that the surgery was due in part to his increased eye pressure.  (Id.)

### 3.    Defendants' Version of the Facts

Lunches are sometimes provided during transports to medical appointments if they interfere with regularly scheduled meals.  (ECF No. 44-1 at 4.)  But lunch was not provided during the transport in question because it was expected to be short and not to interfere with regular meal service.  (Id.)  At the doctor's office, plaintiff asked if lunch had been brought.  (Id. at 5.)  Walls said no because the transport was short.  (Id.)  Plaintiff then started to complain "about his diabetes and lunch."  (Id.)  Defendants told plaintiff that they would ensure that he received a meal if they returned to DVI after regular dinner service.  (Id.)  Plaintiff did not exhibit symptoms of hypoglycemia at the doctor's office or during the return trip to DVI.  (See id.)

////

Walls "personally escorted" plaintiff to the medical clinic when they returned to DVI. (Id. at 5.) The parties agree that, per policy, all inmates who are transported offsite must have a medical examination upon returning to DVI. (Id.; ECF No. 47 at 5.)

At the medical clinic, plaintiff did not report any "symptoms or concerns" about this low blood sugar. (ECF No. 44-1 at 5.) "He was evaluated, treated, and released." (Id.)

All diabetics have hypoglycemic episodes. (Id. at 6.) Plaintiff's diabetes is well-controlled. (Id.) He did not suffer "inadequately controlled glaucoma, increased blood vessel damage, increased eye pressure, pre-mature surgery, [or] increased heart strain" due to the incident in question. (Id.)

**B.      Procedural Background**

Plaintiff filed a complaint on May 20, 2014, (ECF No. 1), which he amended on March 24, 2016, (ECF No. 30). He asserts an Eighth Amendment claim for deliberate indifference to serious medical needs. (Id. at 10.) The crux of the amended complaint is that defendants were deliberately indifferent to the hypoglycemic episode described above. He alleges that their deliberate indifference caused him to suffer "further heart strain, kidney damage, eye damage, blood vessel damage[,] and nerve damage." (Id. at 8–9.)

Defendants answered and the case went into discovery. Plaintiff filed a motion to compel, (ECF No. 36), which the court denied, (ECF No. 43). The court noted that plaintiff had requested "additional information" from defendants. (Id. at 4.) This information included "any and all documents that may give instructions to officers as to their duties in the event an inmate falls ill during transport." (Id.) Apparently, defendants' counsel objected to this request on the ground that it was untimely. (See ECF No. 40-1 ¶ 8.) Yet she indicated that she was willing to look for this information, stating that she contacted the litigation coordinator at DVI at least twice about it. (See id. ¶ 12.) All the same, the court held that these additional requests were "untimely." (ECF No. 43 at 7.)

On October 20, 2016, defendants moved for summary judgment. (ECF No. 44.) Defendants argue that plaintiff's claim for deliberate indifference fails because he did not: (1) exhibit symptoms of medical distress; (2) miss any meals; or (3) suffer any serious harm. (ECF

4

No. 44-1 at 1.)  Regarding reason (3), defendants argue that plaintiff has no evidence that the hypoglycemic episode harmed him other than "conclusory statements."  (Id.)  They further argue that the evidence of his own physician, Dr. Win, shows that his "diabetes is well-controlled and that the . . . incident . . . did not result in . . . permanent harm."  (Id.)  Additionally, defendants argue that plaintiff's "opinions and allegations" that he suffered harm are inadmissible because he is not an "expert witness."  (Id. (citations omitted).)  Defendants also asserted qualified immunity.  (Id. at 10.)

Plaintiff has opposed defendants' motion for summary judgment.  (ECF No. 47.)  He argues that the following factual allegations show that defendants were deliberately indifferent to his hypoglycemia: (1) they failed to summon help at the doctor's office; (2) they got food and/or drink while he was "shackled in the van trembling"; and (3) they failed to summon help when he returned to DVI, ordering him out of the van instead.  (Id. at 10–12.)  Furthermore, he insists that the hypoglycemic episode harmed him, resulting in "swollen ankles and feet, increased eye pressure, back, leg, [and] scrotum pain."  (Id. at 12.)

Plaintiff disputes defendants are entitled to qualified immunity.  (Id. at 16.)  He contends that their actions were clearly unlawful because it was "obvious" that he needed medical assistance and "any reasonable person exercising common sense" would have sought it.  (See id. at 15–16.)  Further, he argues that defendants' failure to seek medical assistance violated CDCR regulations.  (Id. at 15 (citing Cal. Code Regs. tit. 15, § 3354(d)).)  This regulation provides:

> If an inmate is away from a facility for authorized reasons . . . [and] becomes seriously ill or injured, emergency health care attention by available resources shall be obtained by the official in charge. Community physicians and hospitals shall be used if the inmate's condition does not permit prompt return to a department medical facility.

////

////

////

5

On November 21, 2016, defendants replied. (ECF No. 48.) They assert that Dr. Win's affidavit shows that plaintiff's hypoglycemic episode did not harm him. (Id. at 1.) Further, they argue that he failed to submit evidence that the episode harmed him. (Id. at 2.) In their estimation, his own opinion that the episode harmed him is inadmissible because he is not a medical expert. (Id. (citation omitted).)

Plaintiff has moved for reconsideration, (ECF No. 45), of an order issued on October 4, 2016, (ECF No. 43). In the order, the court denied his motion to compel. (Id. at 5–6.) Plaintiff asserts that he requested documents that instruct officers about their duties when an inmate falls ill during transport. (ECF No. 45 at 2.) He also asserts that the court found this request untimely. (Cf. id.) But he contends that he made this request "prior to July 15, 2016," which he believes shows that it was timely. (See id.) Thus, he concludes that the court erred in finding otherwise. (See id.)

Plaintiff also has filed a motion for subpoenas. (ECF No. 46.) Therein, he seeks to subpoena Dr. Win, Dr. Tesluk, and Sally Legaspi, the nurse who treated him with glucose for his low blood sugar. (Id.) Plaintiff states that, "if called," these potential witnesses will testify about the information contained in certain medical records. (Id. at 2.) Defendants did not respond to plaintiff's motion for reconsideration and motion for subpoenas.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. Crawford-El v. Britton, 523 U.S. 574, 600 (1998); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–50 (1986); Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471–72 (9th Cir. 1994). In essence, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

////

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 248; Matsushita, 475 U.S. at 586–87; Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995) (per curiam).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. See, e.g., Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. See Celotex, 477 U.S. at 324 (citation omitted) ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322.

////

////

In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in [Rule 56(a)], is satisfied." Id. at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. Anderson, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. Id. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations unsupported by evidence are insufficient to defeat the motion. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 248; Devereaux, 263 F.3d at 1076 (citations omitted). More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a reasonable juror "could return a verdict for [him] on the evidence presented." Anderson, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. See id. at 249, 255; Matsushita, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the

8

proponent must adduce evidence of a factual predicate from which to draw inferences. Am. Int'l Grp., Inc. v. Am. Int'l Bank, 926 F.2d 829, 837 (9th Cir. 1991) (Kozinski, J., dissenting) (citing Celotex, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

Defendants' motion for summary judgment included a so-called "Rand notice" (ECF No. 44-3) to plaintiff informing him of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Woods v. Carey, 684 F.3d 934, 941 (9th Cir. 2012); Klingele v. Eikenberry, 849 F.2d 409, 411–12 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc).

### III.     ANALYSIS

#### A.     Motion for Summary Judgment

##### 1.     Deliberate Indifference to Serious Medical Needs

To prevail on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must show that: (1) he had a serious medical need; and (2) the defendant's response to the need was deliberately indifferent. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976). Here, defendants concede that plaintiff's hypoglycemic episode was objectively serious. (ECF No. 44-1 at 7.)

Furthermore, the Ninth Circuit has held that diabetes is "a serious medical need," and that "[l]eaving a diabetic . . . without proper food or insulin . . . creates an objectively, sufficiently serious risk of harm." Lolli v. County of Orange, 351 F.3d 410, 420 (9th Cir. 2003) (citation omitted).[1] Therefore, the court proceeds to consider whether defendants were deliberately

---

[1] The plaintiff in Lolli was a pretrial detainee, not an inmate. Therefore, he brought his claim for deliberate indifference to medical needs under "the substantive due process clause of the

9

indifferent to his diabetes.

For a prison official's response to a serious medical need to be deliberately indifferent, the official must "'know[] of and disregard[] an excessive risk to inmate health.'" Peralta v. Dillard, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

"Whether an official possessed such knowledge 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . .'" Johnson v. Lewis, 217 F.3d 726, 734 (9th Cir. 2000) (quoting Farmer, 511 U.S. at 842). Such evidence may include: (1) an inmate's notice to prison officials of his medical need[2]; (2) the frequency or urgency of the notice[3]; (3) physical symptoms indicating a medical need, Vensor, 657 F. App'x at 697; Lolli, 351 F.3d at 421; and (4) whether prison officials mock or act callously toward an inmate complaining of a medical need.[4]  Furthermore, a prison official's knowing disregard of an inmate's serious medical need must cause the inmate harm. Jett, 439 F.3d at 1096.[5]  However, the harm need not be "substantial." Id.; see also McGuckin v. Smith, 974 F.2d

Fourteenth Amendment." 351 F.3d at 418–19. Nonetheless, the court applied "traditional Eighth Amendment standards." Id. at 419.

[2] Farmer, 511 U.S. at 848–49; Vensor v. Schell, 657 F. App'x 695, 697 (9th Cir. 2016) (unpublished memorandum); Lolli, 351 F.3d at 420–21; Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003); Hunt v. Dental Dep't, 865 F.2d 198, 201 (9th Cir. 1989).

[3] Lee v. Ballesteros, 548 F. App'x 466, 466–67 (9th Cir. 2013) (unpublished memorandum); Jett, 439 F.3d at 1097–98; United States v. Gonzales, 436 F.3d 560, 574 (5th Cir. 2006), overruled on other grounds as stated in United States v. Garcia-Martines, 624 F. App'x 874, 879 n.12 (5th Cir. 2015); Lolli, 351 F.3d at 421; Hunt, 865 F.2d at 201.

[4] Vensor, 657 F. App'x at 697; Danley v. Allen, 540 F.3d 1298, 1304, 1309 (11th Cir. 2008); Gonzales, 436 F.3d at 574; Odom v. S.C. Dep't of Corrs., 349 F.3d 765, 771 (4th Cir. 2003); Johnson, 217 F.3d at 734–35; Jones v. Wheeler, No. 91-16627, 1992 WL 246935, at *2 (9th Cir. 1992) (unpublished memorandum); Mullen v. Smith, 738 F.2d 317, 318 (8th Cir. 1984) (per curiam).

[5] But cf. Farmer, 511 U.S. at 845 (citation and bracketing omitted) (stating that "deliberate indifference does not require a prisoner seeking a remedy for unsafe conditions to await a tragic

10

1050, 1060 & n.12 (9th Cir. 1992), <u>overruled on other grounds by</u> <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997).

Here, a reasonable juror could conclude that defendants were aware of and disregarded plaintiff's hypoglycemia. Plaintiff states that he informed defendants that he had recently received his noon insulin shot but had not eaten lunch. He also states that he got sick at the doctor's office and told Parsons, but that defendants did not inform any medical personnel. Further, he states that he told defendants that he needed emergency medical care during the return trip to DVI, but that they continued to ignore him. Although defendants dispute these statements, they admit that plaintiff complained "about his diabetes and lunch" at the doctor's office. (ECF No. 44-1 at 5.) In any event, plaintiff's evidence, if believed, supports a reasonable inference that he frequently notified defendants of his serious medical needs.

A reasonable juror could also conclude that plaintiff manifested symptoms of hypoglycemia. He states that he told Parsons at the doctor's office that he was feeling shaky, nervous, confused, light-headed, and nauseated and having problems with his heart and vision. Further, he states that he was trembling, sweating, and going in and out of consciousness while defendants were at the hamburger restaurant. Defendants dispute that he exhibited these symptoms. On summary judgment, however, plaintiff's evidence "is to be believed." <u>Anderson</u>, 477 U.S. at 255. Moreover, the Ninth Circuit has recognized that hypoglycemia may produce such symptoms. <u>Lolli</u>, 351 F.3d at 420–21. Therefore, whether plaintiff exhibited such symptoms is a genuine dispute of material fact.

Plaintiff's evidence also supports a reasonable inference that defendants mocked him and acted callously toward his serious medical needs. Plaintiff states that, after he complained to Parsons at the doctor's office, Parsons said that he was not going to die and would feel better once he got his "ass" back in the van. Plaintiff further states that, during the return to DVI, he told defendants that he urgently needed medical care, but that they ignored him and stopped at a

---

event . . . before obtaining relief"); <u>Del Raine v. Williford</u>, 32 F.3d 1024, 1035 (7th Cir. 1994) ("To only find an Eighth Amendment violation from inadequate housing when the inmate's health is endangered [erroneously] suggests that frostbite, hypothermia, or a similar infliction is an absolute requisite to the inmate's challenge.").

hamburger restaurant.  Natale, 318 F.3d at 582 (citation omitted) ("We have . . . found deliberate indifference in situations where necessary medical treatment is delayed for non-medical reasons.").  And there is no indication that defendants offered plaintiff any food/drink.  Moreover, plaintiff states that defendants ordered him out of the van upon returning to DVI even though he was hypoglycemic and had swollen ankles and feet.  These actions and remarks suggest deliberate indifference.

Additionally, a reasonable juror could conclude that defendants' alleged disregard of plaintiff's medical needs harmed him.  As noted, the Ninth Circuit has recognized that hypoglycemia may produce the symptoms of which plaintiff complains.  Lolli, 351 F.3d at 420–21.  Likewise, a judge in this District has held that "sweating, panic, insatiable thirst, elevated heart rate, and trembling as a result of a diabetic reaction can satisfy the harm prong of deliberate indifference."  Melendez v. Hunt, 1:13-cv-00279-BAM (PC), 2016 WL 5166469, at *10 (E.D. Cal. Sep. 21, 2016) (citation and bracketing omitted).

Defendants argue that plaintiff did not suffer harm because: (1) his conclusory statements are his only evidence of harm; (2) Dr. Win's affidavit shows that his diabetes is controlled and that the hypoglycemic episode did not permanently harm him; and (3) he is not an expert witness and is not competent to testify regarding the harm he alleges.

These arguments lack merit.  Regarding (1), plaintiffs can show that they suffered symptoms of diabetes through their own testimony.  Lolli, 351 F.3d at 421; Melendez, 2016 WL 5166469, at *10.  Furthermore, it is undisputed that plaintiff suffered hypoglycemia and was treated for low blood sugar.  Thus, it is incorrect to assert that plaintiff's supposedly conclusory statements are his only evidence of harm.  (ECF No. 44-1 at 1.)

Dr. Win's affidavit does not compel the conclusion that plaintiff suffered no harm.  Dr. Win states that, while plaintiff's blood sugar was low, "he did not report any associated symptoms or issues as a result."  (ECF No. 44-5 ¶ 4.)  However, plaintiff states that he suffered various symptoms, and whom to believe is a question for the jury.  Anderson, 477 U.S. at 255 ("Credibility determinations . . . are jury functions . . . .").  Additionally, even if the hypoglycemic episode did not "permanently" harm plaintiff, claims for deliberate indifference to

12

medical needs do not require permanent harm.  See supra p. 11 & n.5; infra p. 14.

Nor must plaintiff be an expert to testify to at least some of the harm that he alleges.  In relevant part, plaintiff states that: (1) he was feeling shaky, nervous, confused, light-headed, and nauseated; (2) his heart was pounding; (3) he had blurred vision; and (4) he was trembling, sweating, and going in and out of consciousness.  To reiterate, diabetic inmates may establish such harm through their own testimony.  Lolli, 351 F.3d at 421; Melendez, 2016 WL 5156469, at *10.  Granted, plaintiff alleges other injuries.  (ECF No. 30 at 8–9 (alleging "further heart strain, kidney damage, eye damage, blood vessel damage[,] and nerve damage").)  However, plaintiff need only show that defendants' alleged deliberate indifference harmed him, which a reasonable juror could conclude based on his other alleged injuries.  Therefore, the court need not consider whether his alleged further heart strain, kidney damage, eye damage, blood vessel damage, and nerve damage harmed him.  This issue is more properly raised in a potential motion in limine.[6]

Similarly, defendants seem to argue that plaintiff failed to show that the hypoglycemic episode "seriously" affected his diabetes.  In their assessment, he must make this showing because he allegedly asserted a claim for deliberate indifference based a "delay in treatment rather than a failure to treat."[7]  But, as indicated above, the Ninth Circuit has rejected the argument that claims alleging a delay in medical treatment require a showing of "substantial," "significant," or "serious" harm.  See Jett, 439 F.3d at 1096; McGuckin, 974 F.2d at 1060 & n.12; supra p. 11 n.5; cf. Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Accordingly, this argument fails.

////

---

[6] The court is not suggesting that plaintiff would be unable to establish such harm.  For instance, plaintiff has submitted a letter from Dr. Tesluk purporting to show that his glaucoma was stable and that he had improved eye pressure as of July 23, 2013, the date of his hypoglycemic episode.  (ECF No. 47 at 26.)  Subsequently, Dr. Tesluk performed two surgeries on plaintiff's eye, allegedly to relieve increased eye pressure.  (ECF No. 47 at 4, 37–38.)  Plaintiff also indicated that he wants to call Dr. Tesluk as a witness at trial.  (ECF No. 46 at 1.)  Therefore, plaintiff's evidence arguably supports the inference that his hypoglycemic episode caused eye damage.

[7] (ECF No. 44-1 at 8 (citing Hallett v. Morgan, 296 F.3d 732 (9th Cir. 2002); Wood v. Housewright, 900 F.2d 1332 (1990); Shapley v. Nev. Bd. of State Prison Commr's, 766 F.2d 404 (9th Cir. 1985)).)

Additionally, defendants argue that they were not deliberately indifferent to plaintiff's diabetes because: (1) he "received his lunch meal with his breakfast service that day"; (2) the transport was "expected to be short and . . . not interfere with a regular meal service"; and (3) "Walls personally escorted [plaintiff] to the medical clinic." (ECF No. 44-1 at 5; see also id. at 1, 8.) However, plaintiff states that he told defendants before they left that he did not have lunch. He also states that he repeatedly told defendants that he needed food and exhibited symptoms of hypoglycemia. Further, he states that defendants failed to seek medical assistance during the trip even though they visited a doctor's office. And this failure, if established, may violate CDCR regulations. See Cal. Code Regs. tit. 15, § 3354(d).

True, it is undisputed that plaintiff was treated for hypoglycemia when he returned to DVI. However, plaintiff states that he collapsed after being ordered out of the van. Coupled with his other evidence, this statement supports a reasonable inference that his collapse, not his prior complaints or symptoms, induced defendants to take him to the medical clinic. Defendants note that policy requires all inmates transported offsite to receive a medical examination when they return to DVI. But this fact does not compel the conclusion that defendants took plaintiff to the medical clinic to get help for his hypoglycemia. And, even if it did, there are genuine factual disputes regarding whether defendants should have sought medical aid sooner. Accordingly, defendants' counterarguments lack merit.

### 2. Qualified Immunity

Qualified immunity protects government officials from liability for civil damages where a reasonable official would not have known that his conduct violated a clearly established right. Anderson v. Creighton, 483 U.S. 635, 638–39 (1987). In resolving questions of qualified immunity, "courts engage in a two-pronged inquiry." Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014) (per curiam). "The first asks whether the facts, taken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a federal right." Id. (citation and bracketing omitted). "The second prong . . . asks whether the right in question was clearly established at the time of the violation." Id. at 1866 (citation omitted).

////

A right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson</u>, 483 U.S. at 640. Clearly established law should not be defined "at a high level of generality"; rather, it "must be particularized to the facts of the case." <u>White v. Pauly</u>, 137 S. Ct. 548, 552 (2017) (per curiam) (citation omitted). While this standard does not require "a case directly on point," <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011), courts typically should identify analogous cases, i.e., ones in which prison officials "acting under similar circumstances" violated the Eighth Amendment, <u>White</u>, 137 S. Ct. at 552. To be analogous, however, the case need not be "materially similar."[8]

In the Ninth Circuit, to assess whether a right is clearly established, courts first look to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." <u>Cmty. House, Inc. v. City of Boise</u>, 623 F.3d 945, 967 (9th Cir. 2010) (citation omitted). Absent binding precedent, courts should consider all relevant decisional law. <u>Capoeman v. Reed</u>, 754 F.2d 1512, 1514 (9th Cir. 1985). Unpublished circuit and district court decisions inform the analysis. <u>Bahrampour v. Lampert</u>, 356 F.3d 969, 977 (9th Cir. 2004); <u>Krug v. Lutz</u>, 329 F.3d 692, 699 (9th Cir. 2003).

Here, it was clearly established by the date of the incident that defendants' alleged conduct was unlawful. The Ninth Circuit has held that a diabetic's "obviously sickly appearance and his explicit statements that he needed food . . . could easily lead a jury to find that the officers consciously disregarded a serious risk to [his] health." <u>Lolli</u>, 351 F.3d at 421. <u>Lolli</u> also established that hypoglycemia may produce many of the symptoms of which plaintiff complains and that such symptoms constitute harm for deliberate indifference purposes. <u>Id.</u> at 420–21; <u>see also</u> <u>Melendez</u>, 2016 WL 5156469, at *10. Similarly, it is clearly established that an inmate can show deliberate indifference to serious medical needs when: (1) he frequently and/or urgently notifies officials of such needs; (2) he displays signs of such needs; and (3) prison officials mock

---

[8] <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002); <u>see also</u> <u>Brosseau v. Haugen</u>, 543 U.S. 194, 199 (2004) (per curiam) (stating that, "in an obvious case," general legal standards may clearly establish law "without a body of relevant cases" (citing <u>Hope</u>, 536 U.S. at 738)); <u>Giebel v. Sylvester</u>, 244 F.3d 1182, 1189 (9th Cir. 2001) (citation omitted) ("[E]ven if there is no closely analogous case law, a right can be clearly established on the basis of common sense.").

him or behave callously toward him.  See supra pp. 10–11 & nn. 2–4.  Accordingly, defendants do not enjoy qualified immunity.

## B.      Motion for Reconsideration

Rule 54(b) provides that Courts may revise interlocutory orders "at any time before the entry of a judgment."  Fed. R. Civ. P. 54(b); see also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 12 (1983) (stating that "every order short of a final decree is subject to reopening at the discretion of the district judge").  Consonantly, the Ninth Circuit has held that "[a]s long as a district court has jurisdiction over the case, . . . it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."  City of L.A., Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 885 (9th Cir. 2001) (citing cases).  Such cause may include "new or different facts or circumstances" that could not be shown "at the time of the prior motion."  See E.D. Cal. R. 230(j).

Here, plaintiff has not shown cause to reconsider his motion to compel.  The court held that his request for documents instructing officers about their duties when an inmate falls ill during transport was untimely.  Plaintiff has not shown otherwise.  Granted, counsel for defendants said that she was willing to look for such information.  However, the record suggests that she expressed such willingness as a courtesy.  Furthermore, the record reflects that plaintiff received documents about CDCR's transport policies.  (See ECF No. 36-1 at 46–75; see also ECF No. 43 at 6.)  Accordingly, plaintiff's motion to compel should be denied.

## C.      Motion for Subpoenas

Apparently, plaintiff seeks to call Dr. Win, Dr. Tesluk, and Nurse Legaspi as witnesses at a potential trial.  However, because the case has not been scheduled for trial, this request is premature.  Cf. Ward v. News Grp. Newspapers, No. CV–88–3340–JMI(TX), 1990 WL 256836, at *1 (C.D. Cal. Aug. 27, 1990) ("Rule 45 of the Federal Rules of Civil Procedure provides that the Court may issue subpoenas for attendance of witnesses at hearings and trials . . . ."); Charles Alan Wright & Arthur R. Miller., 9A Federal Practice and Procedure § 2455 (3d ed. 2017) ("According to Federal Rule 45(a)(1)(A)(iii) any properly issued subpoena may command each person to whom it is directed to attend and give testimony at a time and place specified in the

subpoena.").  However, to the extent that plaintiff seeks to depose these individuals, the discovery deadline has long passed.  (ECF No. 34; ECF No. 43 at 2.)  Therefore, this motion should be denied without prejudice.

**IV.   CONCLUSION**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.      Defendants' motion for summary judgment (ECF No. 44) be denied;

2.      Plaintiff's motion for reconsideration (ECF No. 45) be denied; and

3.      Plaintiff's motion for subpoenas (ECF No. 46) be denied without prejudice.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated:  June 12, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:11
DLB1/prisoner-civil rights/moor1232.msj fr

17